*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0422A (6th Cir.)
File Name: 02a0422a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
　　　　*Plaintiff-Appellee,*

　　　*v.*

No. 00-5827

THOMAS C. SANDLIN,
　　　　*Defendant-Appellant.*

On Petition for Rehearing of an
Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 99-10075—James D. Todd, Chief District Judge.

Argued: October 9, 2001

Decided and Filed: December 13, 2002

Before: MOORE, Circuit Judge; HAYNES,[*] District
Judge.[**]

———————————

[*] The Honorable William J. Haynes, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

[**] The Honorable Nathaniel R. Jones, United States Circuit Judge, a member of the initial panel, retired from the Sixth Circuit effective March 31, 2002, and did not participate in the panel's decision on rehearing.

---

**COUNSEL**

**ARGUED:** Bruce I. Griffey, OFFICE OF BRUCE IRWIN GRIFFEY, Memphis, Tennessee, for Appellant. Tammi R. Simpson, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee. **ON BRIEF:** Bruce I. Griffey, OFFICE OF BRUCE IRWIN GRIFFEY, Memphis, Tennessee, Stephen B. Shankman, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant. Tammi R. Simpson, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee.

---

**SECOND AMENDED OPINION**

---

PER CURIAM. Defendant-Appellant Thomas C. Sandlin ("Sandlin") was charged in a four-count indictment in the United States District Court for the Western District of Tennessee with various drug-related counts. Sandlin pleaded guilty to the first count of the indictment, manufacturing and attempting to manufacture in excess of fifty grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1), and the remaining counts were dismissed pursuant to the government's motion. Although the applicable sentencing range for this count was only fifty-one to sixty-three months, the district court sentenced Sandlin to the ten-year mandatory minimum under 21 U.S.C. § 841(b)(1)(A)(viii) for a violation of § 841(a)(1) "involving 50 grams or more of methamphetamine." Sandlin now appeals his sentence, arguing, *inter alia*, that the district court erred in sentencing him to the mandatory minimum because the government did not prove that he engaged in any single act of manufacturing that produced fifty or more grams of methamphetamine. For the reasons stated below, we **VACATE** Sandlin's sentence and **REMAND** for resentencing within the applicable guidelines range.

## I.  BACKGROUND

On May 27, 1999, Sandlin confessed to officers at the Selmer, Tennessee, police department that he had manufactured three batches of methamphetamine in McNairy County, Tennessee, during the period beginning on or about March 1, 1999.  He stated that he had manufactured in excess of fifty grams of methamphetamine, considering the three batches of methamphetamine as a whole, and that he used some of what he made and gave away the rest to various people.  At that time, he also described, in some detail, the process by which he made methamphetamine to the officers.

Following Sandlin's confession, on September 22, 1999, a federal grand jury returned a four-count indictment against him. The indictment charged Sandlin with manufacturing and attempting to manufacture in excess of fifty grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1), possession with intent to distribute in excess of fifty grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1), manufacturing and attempting to manufacture a controlled substance creating a substantial risk of harm to human life in violation of 21 U.S.C. § 858, and of establishing a place for the manufacture of a controlled substance in violation of 21 U.S.C. § 856.  On May 9, 2000, Sandlin pleaded guilty at a plea hearing before the district judge to Count I of the indictment, manufacturing and attempting to manufacture in excess of fifty grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1).

The probation officer subsequently prepared a Pre-Sentence Report ("PSR").  The PSR stated that Sandlin admitted to police that he had manufactured in excess of fifty grams of methamphetamine.  This amount resulted in a base offense level of twenty-six, and, with a three-level reduction for acceptance of responsibility, the total offense level was calculated at twenty-three.  Sandlin had a criminal history category of II, resulting in a sentencing range under the United States Sentencing Guidelines of fifty-one to sixty-three months.  The mandatory-minimum sentence under 21

U.S.C. § 841(b)(1)(A)(viii) for a violation of § 841(a)(1) "involving 50 grams or more of methamphetamine," however, was ten years. On May 15, 2000, Sandlin filed a position paper in which he objected to imposition of the ten-year mandatory-minimum sentence, arguing that the mandatory-minimum sentence applies only if the offense involved the manufacture of fifty grams or more of "pure" methamphetamine or more than 500 grams of a substance containing methamphetamine. Because he had not produced pure methamphetamine, Sandlin argued that he should be sentenced for having produced less than 500 grams of a substance containing methamphetamine rather than for producing more than fifty grams of pure methamphetamine. Sandlin did not object, however, to the aggregation of the amounts manufactured in the three batches for purposes of reaching the threshold amount triggering the ten-year mandatory-minimum sentence.

At the sentencing hearing, which was held on May 25, 2000, the government presented the testimony of a drug task force agent who interviewed Sandlin on the day of his confession. The agent testified that Sandlin was coherent, that he appeared to understand the agent's questions, and that his confession appeared to be voluntary. The agent testified that Sandlin informed him that he had made methamphetamine in McNairy County on three occasions, and that Sandlin provided the officer with a step-by-step procedure of the manner in which he manufactured methamphetamine. The government also presented testimony of a forensic chemist who examined Sandlin's statement to the agent and his methamphetamine recipe. Based upon the testimony of this chemist, the district court found that the amount of methamphetamine manufactured in the three batches to which Sandlin had admitted "easily reache[d] the amount which would give us a ten-year statutory minimum" and thus sentenced Sandlin to the mandatory minimum of ten years. Joint Appendix ("J.A.") at 54. This appeal followed.

manufactured between 124 and eighty-two grams of methamphetamine. J.A. at 48-49. When these three amounts are considered individually, there is no indication that Sandlin ever manufactured, in a single batch, in excess of fifty grams of methamphetamine.

We further conclude that relief is warranted under the plain-error standard of review. Despite his failure to object below, Sandlin has demonstrated that the district court committed error, that the error was plain, and that it affected his substantial rights, resulting, in fact, in a sentence almost twice as long as the applicable guidelines range. Under these circumstances, it is appropriate that we exercise our discretion in granting Sandlin the relief that he seeks. Thus, we vacate Sandlin's sentence and remand for resentencing.

Having granted relief on this basis, we need not consider whether the imposition of the mandatory-minimum sentence violated *Apprendi* in the present case.

### III. CONCLUSION

For the foregoing reasons, we **VACATE** Sandlin's sentence and **REMAND** for further proceedings consistent with this opinion. We also **VACATE** our prior opinion in this matter, issued on April 2, 2002, pursuant to Fed. R. App. P. 40(a)(4).

evidence offered by the government, the defendant had grown more than 100 marijuana plants and thus sentenced her to the mandatory-minimum sentence for having manufactured more than 100 plants. *See id.* at 491. We reversed, holding that the count of conviction only covered 1993 and that the record did not disclose evidence "that Rettelle cultivated marijuana on a continuous basis." *Id.* at 492. "Rather, Rettelle's 1992 and 1993 marijuana crops were the products of distinct growing seasons separated by several months in which Rettelle apparently did not grow any plants." *Id.*

In reaching this conclusion, we did not provide an "exact definition" of the term "a violation" in the manufacturing context but indicated that, in some cases, manufacturing will involve an ongoing or "continuing" process. *Id.* Thus, if the *Rettelle* defendant had grown marijuana plants year-round for several years, she could have been sentenced for the aggregate number of plants over the whole period. But where the growing seasons, i.e., the acts of manufacturing, were distinct, they had to be treated as distinct violations of 21 U.S.C. § 841(a)(1), and thus they could not be aggregated for purposes of the mandatory minimums required by that provision.

In the present case, the record indicates that Sandlin manufactured the methamphetamine at issue in three batches over a period of almost three months, March through May 1999. The record does not indicate, however, that Sandlin manufactured these batches in anything resembling a "continuing" basis, and the government did not produce any evidence to that effect. Without a specific finding with respect to this issue, the district court erred in aggregating the quantities of methamphetamine that Sandlin manufactured for sentencing purposes. Based on *Winston* and *Rettelle*, the district court should have instead treated each batch of methamphetamine as a separate "violation" of § 841(a)(1) in considering whether Sandlin had produced sufficient quantities of methamphetamine to trigger the mandatory-minimum provision. The government presented evidence that, aggregating the three batches into one amount, Sandlin

## II. ANALYSIS

On appeal, Sandlin raises two arguments not raised below: (1) that the district court erred in sentencing him pursuant to the mandatory minimum because that minimum applies only where the quantity in question was manufactured in a single act of manufacturing; and (2) that his sentence violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the district judge determined the drug quantity that subjected him to the mandatory-minimum sentence by applying the preponderance of the evidence standard. Because neither of these challenges was raised below, our review is for plain error. *See United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998). "Where . . . a criminal defendant has failed to object below, he or she must demonstrate that the error was plain as defined by Fed.R.Crim.P. 52(b) before we may exercise our discretion to correct the error." *Id.* Therefore, for Sandlin to obtain relief, he must show that there was error, that the error was plain, and that it affected his substantial rights. *See United States v. Vincent*, 20 F.3d 229, 234 (6th Cir. 1994). Even if all of these factors exist, we may abstain from intervention unless the error affected the fairness, integrity or public reputation of the proceeding. *See id.*

We first consider Sandlin's contention that the district court erred in imposing the mandatory-minimum sentence based on the quantity of drugs that he admitted to manufacturing. Sandlin now argues that the district court erred by treating his three acts of manufacturing as one violation of 21 U.S.C. § 841(a)(1) in calculating drug quantity in determining whether to apply the mandatory-minimum provision under § 841(b)(1)(A)(viii). In support, Sandlin cites *United States v. Winston*, 37 F.3d 235 (6th Cir. 1994), and *United States v. Rettelle*, 165 F.3d 489 (6th Cir. 1999), for the proposition that a mandatory-minimum sentence, pursuant to § 841(b)(1)(A), applies only to a defendant who has committed a single violation of § 841(a)(1) involving more than the threshold amount of drugs required by § 841(b)(1)(A). He argues that the district court erred in aggregating the quantities of drugs that he admitted having produced in three acts of

manufacturing in determining whether he had manufactured in excess of fifty grams of methamphetamine and contends that there is no support in the record for the conclusion that any single act of manufacturing produced more than fifty grams of methamphetamine.[1]

---

[1]The Government argues in its petition for rehearing that under the line of cases beginning with *Tollett v. Henderson*, 411 U.S. 258 (1973), Sandlin cannot challenge his indictment after he has pleaded guilty. However, we do not hold here that Sandlin was convicted based on an indictment that charged duplicitous offenses, but that Sandlin was given a sentence that his plea did not warrant. That is, Sandlin pleaded guilty to manufacturing a controlled substance, a violation of 21 U.S.C. § 841(a)(1). Neither his plea nor the evidence presented at sentencing indicated that he manufactured over fifty grams in a single offense, the showing that would be necessary to subject him to a mandatory minimum sentence of ten years.

Without a written plea agreement, we are left to rely on the indictment as the only evidence of the offense to which he pleaded guilty. The record contains two versions of the indictment. Although one version suggests that Sandlin could be subject to the mandatory minimum ten-year term, the original version — the indictment that was signed by the United States Attorney and the foreperson of the Grand Jury — charged only that Sandlin had manufactured over fifty grams of methamphetamine. Neither version of the indictment contained any factual basis that could support a finding that Sandlin had manufactured the fifty grams in a single instance, as required under our decisions in *United States v. Winston*, 37 F.3d 235 (6th Cir. 1994), and *United States v. Rettelle*, 165 F.3d 489 (6th Cir. 1999), which we discuss *infra*. Thus the "agreement" here neither alleges that the fifty grams were manufactured in a single offense nor that Sandlin would be subject to the penalties of 21 U.S.C. § 841(b)(1)(A), only that he violated § 841(a)(1) and manufactured, in total over some period, fifty grams. *See also United States v. Fitch*, 282 F.3d 364, 367-68 (6th Cir. 2002) ("Ambiguities in a plea agreement must be construed against the government.").

This understanding of the agreement is bolstered by the actions of both the parties and the district court prior to and during the sentencing hearing, when all appeared to acknowledge that quantity for which Sandlin would be sentenced had not yet been determined. Because the undisputed evidence at sentencing shows that the fifty grams were manufactured in three separate offenses, he could not be sentenced to the mandatory minimum ten-year term. The district court simply erred when it informed Sandlin that the offense to which he was pleading guilty —

In *Winston*, the defendant was convicted, after a jury trial, of three separate counts: a count of conspiracy to possess in excess of fifty grams of crack cocaine; a count of possession of twenty-three grams of crack cocaine; and a count of possession of thirty-seven grams of crack cocaine. Neither of the possession counts, taken individually, involved a quantity of crack cocaine large enough to trigger the mandatory-minimum sentence, as each count involved a separate violation of 21 U.S.C. § 841(a)(1). For this reason, we held that the *Winston* defendant could not be sentenced to a mandatory term of life imprisonment under § 841(b)(1)(A). In reaching this conclusion, we looked to the legislative history of the statute and determined that, in using the term "a violation" in § 841(b)(1)(A), Congress intended to target major drug dealers and manufacturers as opposed to small-time dealers and users. *Winston*, 37 F.3d at 240-41. "If we were to construe 21 U.S.C. § 841(b)(1)(A) as applying to aggregate amounts of drugs held on various separate occasions, it could be used against small-time dealers or users who never possess more than a few grams at a time." *Id.* at 241. *Winston* thus specifically held that discrete acts of possession cannot be aggregated for purposes of calculating the quantity necessary to trigger a mandatory-minimum sentence for "a violation" of 21 U.S.C. § 841(a)(1).

Because *Winston* involved possession, rather manufacturing, its holding is not directly applicable to the facts of the case *sub judice*. In *Rettelle*, however, we applied the holding of *Winston* in the manufacturing context. The *Rettelle* defendant pleaded guilty to growing to ninety-three marijuana plants, which she stated had been grown in 1993. *See Rettelle*, 165 F.3d at 490-92. At sentencing, however, the government offered evidence of a course of conduct, covering both 1992 and 1993, in which the defendant had grown, in the aggregate, more than 100 plants. *See id.* at 491-92. The district court concluded that, under the course of conduct

---

manufacture of a controlled substance, with further factual information that Sandlin had made over fifty grams — carried a mandatory minimum sentence of ten years.